**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KAYLA MONTGOMERY, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>      v.<br><br>PEEK TRAVEL, INC.,<br><br>                              Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Kayla Montgomery brings this action on behalf of herself, and all others similarly situated against Peek Travel, Inc. ("Defendant" or "Peek").  Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      For over two years, Defendant has been nickel and diming visitors of various places of entertainment in violation of the New York Arts and Cultural Affairs Law § 25.07(4) and New York General Business Law § 349.  Defendant Peek is a software-as-a service company that integrates and designs a platform to purchase tickets to various places of entertainment located in New York, including, but not limited to, the Color Factory NYC, the Museum of Ice Cream, the Inter_Intermersive Art Museum, and the ARTECHOUSE.

2.      The purchase flow "powered by Peek.com" remains substantially the same across all places of entertainment that use Peek's ticket purchasing platform. Whenever a consumer selects an admission ticket on the website of these various places, she is quoted a fee-less price,

only to be ambushed by non-delineated "fees" at checkout, after clicking through the various screens required to make a purchase. The fees are masked under the ambiguous category "Taxes & Fees," and Peek does not provide a breakdown of how much fees go to itself as opposed to the place of entertainment, nor does it explain what the fees are for.

3.      To make matters worse, the websites often include a countdown timer for the consumer to complete the transaction. Because New York is a busy place, and because these "Taxes & Fees" are only displayed after a consumer selects her ticket, Defendant puts its consumers on a shot clock and tells them they need to act quick, because Defendant and these places of entertainment cannot hold their admission time slot open forever. This cheap trick has enabled Defendant to swindle substantial sums of money from its customers.

4.      To stop this hustle, New York passed Arts and Cultural Affairs Law § 25.07(4), which provides that "every operator … of a place of entertainment … shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket." "Such disclosure of the total cost and fees shall be displayed in the ticket listing *prior to* the ticket being selected for purchase." *Id*. (emphasis added).  And "[t]he price of the ticket shall not increase during the purchase process." *Id.*  This latest version of the law went into effect August 29, 2022.  *See* Exhibit A.

5.      Moreover, Arts and Cultural Affairs Law § 25.07(4) provides that "every operator … of a place of entertainment … shall disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser."  *Id.*

6.      For these reasons, Plaintiff seeks relief in this action individually, and on behalf of all other ticket purchasers for all places of entertainment in the State of New York that use

Defendant's ticket purchase platform, for actual and/or statutory damages, reasonable attorneys' costs and fees, and injunctive relief under New York Arts and Cultural Affairs Law § 25.33 and New York General Business Law § 349.

**JURISIDCTION AND VENUE**

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant.  Defendant sold at least 100,000 tickets to various places of entertainment through its website during the applicable class period, and is liable for a minimum of fifty dollars in statutory damages for each ticket sold.

8.      This Court has personal jurisdiction over Defendant because Defendant operates a website that sells tickets to various entertainment events taking place in this District.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff purchased tickets to an event in this District through Defendant's website in this District and Plaintiff resides in this District.

**PARTIES**

10.      Plaintiff Kayla Montgomery is an individual consumer who, at all times material hereto, was a citizen and resident of New York, New York.  Plaintiff purchased four general admission tickets to the Museum of Ice Cream NYC on or about January 18, 2023 through the website, https://www.museumoficecream.com.  The transaction flow process she viewed on the website was substantially similar to that depicted in Figures 1 through 7 in this complaint.

11.      Defendant Peek Travel, Inc. is a Delaware corporation with its principal place of business in San Francisco, California.

3

## RELEVANT FACTUAL ALLEGATIONS

### Peek's Ticket Purchase Platform on the Museum of Ice Cream NYC Website

12.     When a person visits www.museumoficecream.com, on the main page, she can click the red "Reserve Tickets" button to select admission tickets to visit Defendant's Museum of Ice Cream in New York City on various dates.   *See* Figure 1.



**Figure 1**

13.     After a consumer selects the "RESERVE VIP TICKETS" or the "RESERVE GENERAL ADMISSION TICKETS" button, she is taken to a screen which provides a list of various museum admission dates, times, and ticket prices.  The screen purports to provide the total cost of the ticket, listing a dollar amount under the time the consumer selects.  *See* Figure 2, next page.  However, the real "total cost" of any ticket, inclusive of fees, is not shown on this screen, in violation of New York Arts & Cultural Affairs Law § 25.07(4).  *Id*.  This screen states that it is "powered by Peek.com," which is operated by the Defendant.  *Id.*



**Figure 2**

14.     After a consumer clicks on the "Book Now" button in Figure 2, she is taken to another page which displays the date and time that she selected to visit the museum, as well as the cost of the ticket.  *See* Figure 3-A, next page.  The page also requests the consumer put in her personal and contact information.  *Id.*  The total cost of the ticket is also not displayed on this page.  *Id.*  Once again, the screen states that the website is "powered by Peek.com."  *Id.*



**Figure 3-A**

15.     *Only if* the consumer clicks on or hovers over the small red "i" icon on the page, does the website inform her that "the displayed ticket price is pre-ticketing fees." *See* Figure 3-B, next page.  Even still, it does not tell her how much those ticketing fees are. *Id.*  Once again, the screen states that the website is "powered by Peek.com." *Id.*



**Figure 3-B**

16.    *After* a consumer inputs her personal and contact information, she is prompted with a set of boxes to check regarding marketing communications and Terms and Conditions. *See* Figure 4, next page.  Again, the total cost of the ticket is not displayed on this page either. *Id*.  For January 24, 2024 at 4:00 PM, the price of a "General Admission" ticket is displayed as "$42.00 per person."  *Id*.  And again, the screen states that the website is "powered by Peek.com."  *Id*.



**Figure 4**

17.     After checking those boxes, the consumer may click "Continue."  *Id.*  Once the

consumer clicks "Continue," she is taken to a screen offering her the ability to purchase

additional products along with her admission ticket.  *See* Figures 5-A & 5-B, next page.  The

screens state that the website is "powered by Peek.com."  *Id.*



**Figure 5-A**



**Figure 5-B**

18.    Once a consumer clicks on the "Continue" button again, a final checkout screen emerges, which requires the user to input her payment information.  *See* Figure 6.  On the right-side of the same screen, the "Total" ticket price is finally displayed, which includes $13.23 of "Taxes & Fees."  *Id*.  This is the first time the website makes explicit mention of additional "fees."  Once again, the screen states that the website is "powered by Peek.com."  *Id.*



**Figure 6**

19.    As displayed in Figure 6, the website does not delineate how much of the additional $13.23 is allocated to taxes versus fees.  *Id.  Only if* a consumer clicks on or hovers over the question mark icon next to "Taxes & Fees" does the webpage disclose a "Service Fee" of "$9.50."  *See* Figure 7, next page.



**Figure 7**

20.     This is the first and only time that a $9.50 per ticket "Service Fee" is displayed to the consumer. *Id.* And to make matters worse, a consumer can complete the final checkout page without ever clicking on the question mark icon to be shown the $9.50 per ticket service fee. *Compare* Figure 6 *with* Figure 7. Once again, the screens state that the website is "powered by Peek.com." *Id.*

21.     Because this website is "Powered by Peek.com," Defendant collects the funds from the consumer directly, and thereafter disburses it to 1and8, Inc., the operator of the Museum of Ice Cream NYC.

**Peek's Ticket Purchase Platform on the Color Factory NYC Website**

22.     When a person visits the website, https://www.colorfactory.co/, on the main page, she can click the multi-colored "BUY TICKETS" button to select admission tickets to visit Color Factory NYC on various dates. *See* Figure 8, next page.



**Figure 8**

23.    After a consumer selects the "BUY TICKETS" button, she is taken to a screen which provides a list of various museum admission dates, times, and prices. *See* Figure 9, next page. The "total cost" of any ticket, inclusive of fees, is not shown on this screen, in violation of New York Arts & Cultural Affairs Law § 25.07(4). *Id.* A ticket for admission at 11:45 a.m. on January 11, 2024 was quoted at "$41.00." *Id.*



**Figure 9**

24.    After a consumer clicks on the date and time of the ticket she wishes to purchase, a banner displays on the bottom of the page re-displaying the same "$41.00" price, again failing to disclose ancillary fees, with a blue "Book Now" button.  *See* Figure 10, next page.



**Figure 10**

25.     After a consumer clicks the "Book Now" button, she is taken to a screen re-displaying the same "$41.00" price, again excluding ancillary fees, and requiring that the consumer input her name, phone number, and email address to continue the purchase process. *See* Figure 11, next page. This screen states that it is "powered by Peek.com," which is operated by the Defendant.

14



**Figure 11**

26.     Once a consumer inputs her name, phone number, and email address, another banner appears requiring the customer to answer two questions before clicking a yellow "Continue" button.  *See* Figure 12, next page.  Again, the same "$41.00" price is displayed, excluding ancillary fees.  *Id.*  This screen states that it is "powered by Peek.com," which is operated by the Defendant.



**Figure 12**

27.     After the consumer clicks on the "Continue" button, a final checkout screen

emerges, which requires the user to input her payment information, all while an 8-minute clock

is ticking down.  *See* Figure 13, next page.  On the right-side of the same screen, the "TOTAL"

ticket price is displayed, which, for admission at 11:45 a.m. on January 11, 2024, included an

additional $8.99 of "Taxes & Fees."  *Id.*  This is the first time the screen makes mention of

additional "fees." This screen states it is "powered by Peek.com," which is operated by the Defendant.



**Figure 13**

28. As displayed in Figure 13, Defendant does not delineate how much of the additional $8.99 is allocated to taxes versus fees. *Id.* That information is never made available to the consumer, even after she completes the checkout process and purchases a ticket.

29. Assuming Defendant levies the correct 8.875% New York City sales and use tax[1], the price in Figure 13 represents approximately $5.36 in ancillary fees.

30. Because this screen is "Powered by Peek.com," Defendant collects the funds from the consumer directly, and thereafter disburses it to Color Factory, LLC the operator of the Color Factory NYC.

---

[1] https://www.nyc.gov/site/finance/business/business-nys-sales-tax.page (last visited Jan. 12, 2024).

**Peek's Ticket Purchase Platform on the Inter Intermersive Art Museum's Website**

31.    When a person visits the website, https://www.interiam.co/, on the main page, she can click the purple "Book Tickets" button to select admission tickets to visit the Inter_Intermersive Art Museum in New York City on various dates.   *See* Figure 14.



**Figure 14**

32.    After a consumer selects the "BOOK TICKETS" button, she is taken to a screen, which provides a list of various museum admission types, dates, and times.   No ticket prices are shown to a consumer at this stage.   *See* Figure 15, next page.   This screen states it is "powered by Peek.com," which is operated by the Defendant.



**Figure 15**

33.     After a consumer clicks on the "Book Now" button in Figure 15, she is taken to another page, which displays the date and time that she selected to visit the museum, as well as the cost of the ticket. *See* Figure 16, next page.  The page also requests the consumer put in her personal and contact information. *Id.*  The total cost of the ticket is also not displayed on this page. *Id.*  This screen states it is "powered by Peek.com," which is operated by the Defendant.



**Figure 16**

34.     After a consumer inputs her information, she is prompted with a set of boxes to check regarding the operator of the place of entertainment's refund policy and Terms and Conditions.  The actual total cost of the ticket is not displayed on this page.  This screen states it is "powered by Peek.com," which is operated by the Defendant.



**Figure 17**

35.     Only after completing this page is a consumer taken to the final checkout screen where she becomes aware that the displayed ticket price is different than the actual total cost of the ticket.  *See* Figure 17.  This screen requires the consumer to input her payment information. *Id*.  This screen states it is "powered by Peek.com," which is operated by the Defendant.  On the right side of the screen, the "Total" ticket price is finally displayed, which includes $8.05 of "Taxes and Fees."  *Id*.  The cost of the ticket jumps from $39.95 (price for adults) to $48.00. This is the first time Defendant makes explicit mention of additional "fees."  *Id*.

36.    As displayed in Figure 17, Defendant does not delineate how much of the additional $8.05 is allocated to taxes versus fees. *Id.* *Only if* a consumer clicks on or hovers over the question mark icon next to "Taxes & Fees" does the webpage disclose a "Convenience Fee" of "$4.50." *See* Figure 18.



**Figure 18**

37.    This is the first and only time that Defendant's $4.50 per ticket "Convenience Fee" is displayed to the consumer. *Id.* This screen states it is "powered by Peek.com," which is

operated by the Defendant.  Defendant fails to disclose how much of the fee goes to the operator of the place of entertainment as opposed to the Defendant.  And to make matters worse, a consumer can complete the final checkout page without ever clicking on the question mark icon to be shown Defendant's $4.50 per ticket convenience fee.  *Compare* Figure 17 *with* Figure 18.

<u>**NEW YORK ARTS & CULTURAL AFFAIRS LAW**</u>

38.     Effective August 29, 2022, New York enacted Arts & Cultural Affairs Law § 25.07(4), which provides that "[e]very operator or operator's agent of a place of entertainment… shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket, and disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a <u>service charge</u>, or any other fee or surcharge to the purchaser.  Such <u>disclosure</u> of the <u>total cost</u> and fees shall be displayed in the ticket listing <u>prior to</u> the ticket being <u>selected for purchase</u>."  *Id*. (emphasis added).  And "[t]he price of the ticket shall not increase during the purchase process."  *Id.*; *Compare with* Figures 2 through 7.

39.     Shortly after the law was enacted, ticketing websites peppered the State of New York's Division of Licensing Services with questions about the scope of the law.  As explained by the Division of Licensing Services, "the ticket purchasing process begins once a consumer visits a ticket marketplace and first sees a list of seat prices."  *See* N.Y. Dep't of State, Div. Licens. Servs., *Request for Additional Guidance – New York State Senate Bill S.9461*, attached hereto as **Exhibit A**, at 1.  "From the moment the prospective purchaser assesses the [] ticket lists through the final payment … there should be no price increases to the purchaser for the ticket itself."  *Id.*  "When a prospective purchaser selects a ticket with full disclosure of the ticket price, the purchaser <u>should not then have to search for the total price</u> of the ticket <u>as the purchaser proceeds through the purchasing process</u>, it should continue to be readily available to the purchaser."  *Id*. at 2 (emphasis added).  "In short, the ticket listing must include the total cost

of the ticket, <u>with a breakdown of all service charges, fees and surcharges</u>, that the purchaser must pay just to purchase the ticket." *Id.* (emphasis added).

## CLASS REPRESENTATION ALLEGATIONS

40.    **Nationwide Class**: Plaintiff seeks to represent a class defined as all individuals in the United States who purchased tickets to places of entertainment located in New York State which used screens or sites that were "powered by Peek.com" or otherwise created in part by Defendant on or after August 29, 2022.  Excluded from the Nationwide Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

41.    **New York Subclass**: Plaintiff seeks to represent a class defined as all individuals in New York who purchased tickets to who purchased tickets to places of entertainment in located New York state which used screens which were "powered by Peek.com" or otherwise created in part by Defendant on or after August 29, 2022.  Excluded from the New York Subclass is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

42.    Members of the Nationwide Class and New York Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Nationwide Class and New York Subclass are at least in the hundreds of thousands.  The precise number of Nationwide Class and New York Subclass members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Nationwide Class and New York Subclass members may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant.

43.    Common questions of law and fact exist as to all Nationwide Class and New York Subclass members and predominate over questions affecting only individual Nationwide Class

and New York Subclass members.  Common legal and factual questions include, but are not

limited to: (a) whether Defendant failed to disclose the total cost of the ticket, including all

ancillary fees, prior to the tickets being selected for purchase in violation of New York Arts &

Cultural Affairs Law § 25.07(4); (b) whether the displayed price of Defendant's tickets increases

during the purchase process in violation of New York Arts & Cultural Affairs Law § 25.07(4);

and (c) whether Defendant failed to disclose its service fee in a clear and conspicuous manner in

violation of New York Arts & Cultural Affairs Law § 25.07(4).

44.     The claims of the named Plaintiff are typical of the claims of the Nationwide

Class and New York Subclass in that the named Plaintiff and the Nationwide Class and New

York Subclass sustained damages as a result of Defendant's uniform wrongful conduct, based

upon Defendant's failure to disclose the total cost of its tickets, including Defendant's service

fees, throughout the online ticket purchase process.

45.     Plaintiff is an adequate representative of the Nationwide Class and New York

Subclass because her interests do not conflict with the interests of the Nationwide Class and New

York Subclass members she seeks to represent, she has retained competent counsel experienced

in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of

Nationwide Class and New York Subclass members will be fairly and adequately protected by

Plaintiff and her counsel.

46.     The class mechanism is superior to other available means for the fair and efficient

adjudication of the claims of Nationwide Class and New York Subclass members.  Each

individual Nationwide Class and New York Subclass member may lack the resources to undergo

the burden and expense of individual prosecution of the complex and extensive litigation

necessary to establish Defendant's liability.  Individualized litigation increases the delay and

expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### New York Arts & Cultural Affairs Law § 25.07
### (On Behalf Of The Nationwide Class and New York Subclass)

47.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

48.     Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and New York Subclass against Defendant.

49.     Defendant is an "operator's agent of a place of entertainment" because Defendant works on the behest of operators of places of entertainment, including but not limited to, Color Factory, LLC (which operates the Color Factory NYC), 1AND8, Inc. (which operates the Museum of Ice Cream NYC), Inter_Iam, Inc. (which operates Inter_Intermersive Art Museum), and ATH NY CM LLC (which operates the ARTECHOUSE NYC).  N.Y.  Arts & Cult. Aff. Law § 25.03(6).

50.     Defendant is a "Platform that facilitates the sale or resale of tickets" because Defendant provides the website screens through which consumers to various places of entertainment sell tickets, as shown in the examples in the complaint.

51.     Color Factory NYC is a "place of entertainment."  "'Place of entertainment' means any privately or publicly owned and operated entertainment facility such as a theatre, stadium, arena, racetrack, museum, amusement park, or other place where performances, concerts, exhibits, athletic games or contests are held for which an entry fee is charged."  N.Y. Arts & Cult. Aff. Law § 25.03(6) (emphasis added).

52.     The Museum of Ice Cream NYC is a "place of entertainment."  "'Place of entertainment' means any privately or publicly owned and operated entertainment facility such as a theatre, stadium, arena, racetrack, museum, amusement park, or other place where performances, concerts, exhibits, athletic games or contests are held for which an entry fee is charged."  N.Y.  Arts & Cult. Aff. Law § 25.03(6) (emphasis added).

53.     Inter_Intermersive Art Museum is a "place of entertainment."  "'Place of entertainment' means any privately or publicly owned and operated entertainment facility such as a theatre, stadium, arena, racetrack, museum, amusement park, or other place where performances, concerts, exhibits, athletic games or contests are held for which an entry fee is charged."  N.Y.  Arts & Cult. Aff. Law § 25.03(6) (emphasis added).

54.     ARTECHOUSE is a "place of entertainment."  "'Place of entertainment' means any privately or publicly owned and operated entertainment facility such as a theatre, stadium, arena, racetrack, museum, amusement park, or other place where performances, concerts, exhibits, athletic games or contests are held for which an entry fee is charged."  N.Y.  Arts & Cult. Aff. Law § 25.03(6) (emphasis added).

55.     Defendant violated New York Arts & Cultural Affairs Law § 25.07(4) by failing to disclose the "total cost of a ticket, inclusive of all ancillary fees that must be paid in order to

purchase the ticket" after a ticket is selected, as depicted in Figures 2 through 6, Figures 9 through 13, and Figures 15 through 17 of this Complaint.

56.     Defendant also violated New York Arts & Cultural Affairs Law § 25.07(4) by increasing the total cost of its tickets during the purchase process, as depicted in Figures 2 through 6, Figures 9 through 13, and Figures 15 through 17 of this Complaint.

57.     Defendant also violated New York Arts & Cultural Affairs Law § 25.07(4) by failing to "disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser," as depicted in Figures 6, 13, and 17 of this Complaint.

58.     Everything above 8.875% of the ticket price of Defendant's "Taxes & Fees" is an "ancillary fee[] that must be paid in order to purchase the ticket."  N.Y. Arts & Cult. Aff. Law § 25.07(4).

59.     On or about January 18, 2023, Plaintiff purchased four general admission tickets to Museum of Ice Cream NYC, totaling $144.00.  Plaintiff was forced to pay Defendant's ancillary fees, which were displayed as "Taxes and Fees."  Plaintiff paid $44.40 in Taxes & Fees. Based on the 8.875% tax rate, Plaintiff paid $31.62 in ancillary fees.

60.     Plaintiff was harmed by paying this service fee.  These fees were unlawful because the total cost was not disclosed to Plaintiff at the beginning of the purchase process in violation of New York Arts & Cultural Affairs Law § 25.07(4), the fees were not clearly and conspicuously disclosed on the final checkout page in violation of New York Arts & Cultural Affairs Law § 25.07(4), the total cost of the tickets increased during the purchase process in violation of New York Arts & Cultural Affairs Law § 25.07(4), and the fees were unreasonable premiums under New York Arts & Cultural Affairs Law § 25.29.

61.     Plaintiff was also harmed by not having the total cost of her tickets disclosed upfront at the start of the purchase process.  By not knowing the total cost of her tickets before Plaintiff selected her tickets for purchase from Defendant, Plaintiff could not shop around for tickets from other sellers like Get Your Guide or Trip Advisor, just to name a few. *See, e.g.*, https://www.getyourguide.com/new-york-city-l59/new-york-city-museum-of-ice-cream-general-admission-ticket-t382713/; https://www.tripadvisor.com/AttractionProductReview-g60763-d23405759-Museum_of_Ice_Cream_New_York_City_Admission_Ticket-New_York_City_New_York.html.  As such, Plaintiff had no way of knowing whether she was getting the best deal her money could buy.  By hiding its fees, Defendant was able to reduce price competition and cause consumer harm to consumers like Plaintiff.

62.     At the time Plaintiff purchased her tickets, she was not aware that Defendant's fees were unlawful under the New York Arts & Cultural Affairs Law.  She was not a "website tester" browsing websites in search of legal violations.  Plaintiff was instead browsing the websites because she sincerely intended to purchase tickets to a place of entertainment, and she did, in fact, purchase those tickets.

63.     On behalf of herself and members of the Nationwide Class and New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover her actual damages or fifty dollars, whichever is greater, and reasonable attorneys' fees.  *See* N.Y. Arts & Cult. Aff. Law § 25.33.

**SECOND CLAIM FOR RELIEF**
**Violation of General Business Law § 349**
**(On Behalf Of The New York Subclass)**

64.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

29

65.     Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

66.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

67.     Defendant committed deceptive acts and practices by misleadingly and deceptively obscuring the itemization of the extra charges it adds to its ticket prices, and masking its fees under the category "Taxes & Fees." On some websites, like that of the Color Factory NYC, consumers had no way of discovering how much went to taxes as opposed to fees. On other websites, like that of the Museum of Ice Cream NYC or the Inter_Intermersive Art Museum, consumers needed to click on the small "?" button to discover how much went to fees, and even then, Defendant failed to disclose how much it collected in fees as opposed to how much the operator of the place of entertainment collected in fees.

68.     Defendant committed deceptive acts and practices by misleadingly and deceptively hiding its "fees" under the label "Taxes & Fees."

69.     Defendant's deceptive acts and practices were directed at consumers.

70.     Defendant's deceptive acts and practices are misleading in a material way because they deliberately make the itemization of extra charges harder to find, and fundamentally misrepresent the additional costs imposed by Defendant on consumers by masking Defendant's "fees" as, in part, a tax on the ticket purchase.

71.     As a direct and proximate result of Defendant's false, misleading, and deceptive representations, Plaintiff and members of the Class and Subclass were injured in that they would not have purchased the tickets, or would have paid substantially less for them, but for Defendant's obfuscation of the extra charges in an inconspicuous dropdown menu and its false and misleading representations that the extra charges included both fees and taxes.

72.     On behalf of herself and the New York Subclass, Plaintiff seeks to recover her actual damages or fifty dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the Nationwide

Class and New York Subclass prays for judgment as follows:

(a)    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

(b)    For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d)    For compensatory and statutory damages in amounts to be determined by the Court and/or jury;

(e)    For prejudgment interest on all amounts awarded;

(f)    For an order of restitution and all other forms of equitable monetary relief;

(g)    For injunctive relief as pleaded or as the Court may deem proper; and

(h)    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

Dated: February 4, 2025               Respectfully submitted,

                                      **BURSOR & FISHER, P.A**.

                                      By:    */s/ Philip L. Fraietta*
                                             Philip L. Fraietta

                                      Philip L. Fraietta
                                      1330 Avenue of the Americas
                                      32nd Floor
                                      New York, NY 10019
                                      Telephone: (646) 837-7150
                                      Facsimile: (212) 989-9163
                                      Email: pfraietta@bursor.com

                                      Stefan Bogdanovich (*pro hac vice app. forthcoming*)
                                      1990 North California Blvd., Suite 940

Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: sbogdanovich@bursor.com

*Attorneys for Plaintiff*