UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Kayla Montgomery, individually and on behalf of all others similarly situated,

                Plaintiff,

-against-

Peek Travel, Inc.,

                Defendant.

25-cv-1015 (AS)

OPINION AND ORDER

---

ARUN SUBRAMANIAN, United States District Judge:

Plaintiff Kayla Montgomery, on behalf of a putative class, sued an online ticket seller over alleged unlawful fees charged to consumers purchasing tickets to New York attractions. Dkt. 1. Defendant Peek Travel, Inc. now moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) and also challenges Montgomery's standing as a class representative. Dkt. 15. For the following reasons, Peek's motion is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

In January 2023, Montgomery purchased four tickets from to visit the Museum of Ice Cream (MOIC) in New York City.[1] Dkt. 1 ¶ 10. MOIC's online ticketing system is operated by Peek. Dkt. 1 ¶¶ 12–13. In addition to the $144 price for the tickets, Montgomery paid $44.40 in "taxes and fees." Dkt. 1 ¶ 59. Montgomery alleges that the vast majority of the tax and fee amount ($31.62) constituted ancillary fees, not taxes that were required to be collected under state or local law. Dkt. 1 ¶¶ 58–59.

During the sales flow, the existence of the fees was not clearly broadcasted to consumers. When choosing a date and time to visit the museum, the website showed only the base ticket price. Dkt. 1 ¶¶ 13–14. Once a date and time were selected, the only hint of additional fees came through a message displayed if a consumer hovered her cursor over a red "i" icon saying that the displayed price was "pre-ticketing fees"; the amount of the fees was not mentioned. Dkt. 1 ¶ 15. Only several pages later, on the final checkout screen, was the total fee amount displayed. Dkt. 1 ¶ 18. The breakdown between government-mandated taxes and a "service fee" was not prominently displayed; it was only visible if the user hovered over a red "?" icon. Dkt. 1 ¶ 19.

Montgomery filed this lawsuit in February 2025, alleging that (1) the fees charged were illegal because Peek failed to disclose the total cost of a ticket, including fees, in violation of New York

---

[1] The background is drawn from factual allegations in Montgomery's complaint, which the court accepts as true for the purposes of a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Arts & Cultural Affairs Law § 25.07(4), and that it constitutes a deceptive business practice in violation of New York General Business Law § 349. Dkt. 1. In addition to seeking damages on behalf of herself, Montgomery seeks to bring claims on behalf of consumers nationwide who purchased tickets through Peek for multiple New York attractions.[2]

Peek moves to dismiss the complaint. Dkt. 15. Peek argues (1) that some claims are precluded by an earlier class-action settlement; (2) that Montgomery lacks standing to raise the claims; and (3) that Montgomery cannot serve as a representative of the proposed class.

## LEGAL STANDARDS

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when [a] district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The task of the district court is to determine whether the Pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (cleaned up). "In resolving a Rule 12(b)(1) motion, a district court may refer to evidence outside the pleadings." *Est. of Close v. Cigna Health & Life Ins. Corp.*, 2023 WL 8846562, at *2 (S.D.N.Y. Dec. 21, 2023).

To survive a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing a motion to dismiss, a court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016).

## DISCUSSION

### I. Montgomery has standing

"Federal courts are courts of limited jurisdiction and must independently verify the existence of subject-matter jurisdiction before proceeding to the merits." *Singh v. United States Citizenship & Immigr. Servs.*, 878 F.3d 441, 445 (2d Cir. 2017), *as amended* (Jan. 9, 2018). Standing is a question of subject-matter jurisdiction. *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 735 (2d Cir. 2017). So the Court must address standing at the outset.

As Montgomery purchased tickets only for MOIC, the Court divides the standing inquiry into two questions. First, the Court addresses Montgomery's standing to challenge fees charged to persons buying tickets to MOIC. Second, the Court considers whether Montgomery can raise a broader challenge to Peek's fees for tickets sold for other venues. The Court finds that Montgomery has standing in both cases.

---

[2] Although Montgomery's complaint sought both damages and injunctive relief, she does not oppose Peek's motion to dismiss any claim to injunctive relief. Dkt. 26 at 20. The Court therefore does not analyze Peek's arguments on the issue.

### A. Montgomery has standing to challenge Peek's fees for MOIC

Montgomery has unquestionably pled that Peek's fees on MOIC tickets have created an injury in fact. She alleges that she purchased tickets from Peek's site and was charged an unlawful fee. Dkt. 1 ¶¶ 59–61. The financial loss she incurred from paying the fee suffices to create standing. *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013), *as amended* (Mar. 21, 2013) ("Even a small financial loss is an injury for purposes of Article III standing.").

Resisting this conclusion, Peek points only to *Curanaj v. Tao Grp. Operating LLC*, 2024 WL 5456192 (N.Y. Sup. Ct. July 25, 2024). There, a New York state court held that a plaintiff suing under § 25.07(4) had not demonstrated standing when "she was harmed by paying an unlawful fee." *Id.* at *6. That case is of limited relevance. Article III standing requirements apply only to federal courts, and New York courts apply a different standing doctrine. *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989) ("We have recognized often that the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability."); *US Bank Nat'l Ass'n v. Nelson*, 163 N.E.3d 49, 51 (N.Y. 2020) (Wilson, J., concurring) (noting that "federal constitutional standing doctrine is of little or no relevance" in New York state courts). The Court thus concludes that Montgomery has standing to challenge the fees charged to visit MOIC.[3]

### B. Montgomery has standing to be a class representative against Peek's fee practices more generally

Although Montgomery alleges that she was charged unlawful fees only for MOIC, she also challenges Peek's similar fee practices with respect to other New York attractions, including Color Factory, Intermersive, and Artechouse. Dkt. 1 ¶ 1. Peek argues that because Montgomery never alleges that she interacted with those websites, she lacks standing to be able to challenge Peek's fee practices with respect to them. Dkt. 17 at 25. The Court disagrees. For this argument, Peek is best understood to be moving to strike the complaint's class allegations under Fed. R. Civ. P. 12(f), based on Montgomery's lack of standing to assert those allegations. *See Bensky v. Indyke*, 743 F. Supp. 3d 586, 596 (S.D.N.Y. 2024).

A named plaintiff can "assert claims on behalf of other class members if '[s]he plausibly alleges (1) that [s]he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendant[].'" *Barrows v. Becerra*, 24 F.4th 116, 129 (2d Cir. 2022) (quoting *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012)). Put another way, the

---

[3] In its reply brief, Peek shoehorns two additional arguments under the header of "standing": (1) that MOIC, and not Peek, was responsible for the fees under state law and (2) that plaintiff did not plausibly allege why the fee constituted an "unreasonable premium" within the meaning of the state statute. The Court does not consider these arguments, which do not directly relate to Article III standing, were raised for the first time in a reply brief, and rely in part on declarations and other evidence outside of the complaint.

Court considers whether, at a sufficient level of generality, a named plaintiff's injury is similar to those in the putative class. That test is met here.

As the Court concludes above, Montgomery has alleged that she has suffered an injury-in-fact because of the fees she paid when visiting MOIC. And although there may be slight factual differences in terms of exactly how the fees were displayed on the various Peek-operated websites, the allegations about hidden fees implicate the same set of concerns. *See Gratz v. Bollinger*, 539 U.S. 244, 262–66 (2003) (holding that an undergraduate transfer applicant challenging affirmative action policies had standing to bring class claims on behalf of freshman applicants to the same university, since the claims "d[id] not implicate a significantly different set of concerns").

Of course, while Montgomery has plausibly alleged standing to assert class claims with respect to other attractions, that does not necessarily mean that her injury is sufficiently typical of the putative class or that she meets the other requirements of Federal Rule of Civil Procedure 23. *See NECA*, 693 F.3d at 165 (noting that "it is by no means a foregone conclusion" that a class should be certified under Rule 23 just because the proposed class representative has standing to represent the putative class). Peek may raise challenges to class certification at the appropriate time.

## II.   The prior settlement agreement bars claims tied to Color Factory tickets

Turning to the merits, the Court first addresses Peek's claim that a prior settlement agreement bars any allegations tied to tickets to the Color Factory. The Court agrees that putative class members who purchased Color Factory tickets released any claims against Peek related to those purchases.

In 2024, the Color Factory agreed to settle a class-action claim against it for allegedly violating § 25.07(4) by failing to disclose ticketing fees. Dkt. 16-4. The settlement released "all Released Claims against the Released Parties." *Id*. § 3.2. "Released Claims" included "any and all actual, potential, filed, known or unknown" claims based on any law "arising out of, or otherwise relating to any facts, transactions, events, matters, occurrences . . . regarding the alleged collection and retention by [the Color Factory] of fees in connection with electronic ticket sales" during the same time period that this suit covers. *Id*. § 1.32. "Released Parties" includes not just the Color Factory, but also its "representatives" and "sales and/or customer service agents." *Id*. § 1.33.

Montgomery does not appear to contest that putative class members seeking to recover damages tied to fees paid for Color Factory tickets would be bound by the settlement agreement. Instead, she argues that the language of the agreement does not release claims against Peek. Dkt. 26 at 21–23. She argues that it does not apply because (1) the complaint seeks damages from fees collected and retained by Peek, not the Color Factory, and (2) Peek is not alleged to be a "representative" or "sales and/or customer service agent." Dkt. 26 at 21–23. Neither argument is persuasive.

*First*, Montgomery's distinction between fees collected and retained by Peek and those collected and retained by the Color Factory is illusory. Montgomery does not allege that there were

4

separate fees payable to the two entities; in fact, the screenshots in her complaint suggest the opposite. Dkt. 1 ¶¶ 19, 27–28, 36. Instead, her allegation is based on the (reasonable) assumption that "Peek does not work for free." Dkt. 26 at 21. In effect, Montgomery appears to argue that any compensation that Peek received for processing the transaction should be considered a separate "fee" from whatever was collected by the Color Factory. The Court rejects that argument. While Peek does not dispute that it was compensated, that does not mean that it "collected and retained" its own fee. In fact, plaintiff's own complaint only shows a single fee charged to patrons of attractions served by Peek.

*Second*, Peek is covered as a "Released Part[y]" as Montgomery's allegations make clear Peek is a sales agent for the Color Factory. Montgomery's complaint alleges that when a consumer visits the Color Factory's website to purchase tickets, the ticketing system is operated by Peek. Dkt. 1 ¶ 22, 25. Under common usage, Peek is a "sales agent" for the Color Factory when selling Color Factory tickets, as it processes sales transactions on behalf of the Color Factory. *See* "Agent," Black's Law Dictionary (12th ed. 2024) ("Someone who is authorized to act for or in place of another"); "Sales Agent," Mirriam-Webster.com Dictionary (last visited November 19, 2025) ("[O]ne who is authorized or appointed by a manufacturer to sell or distribute his products within a given territory . . . ."). The Court thus concludes that all class claims related to ticket purchases to the Color Factory are precluded by the settlement agreement and must be dismissed.[4]

### III. Montgomery can serve as a representative of the proposed class

Peek finally challenges Montgomery's proposed status as a class representative, arguing that she cannot represent a nationwide class. Dkt. 17 at 30–31. The Court disagrees. Once again, the Court construes Peek's argument as a motion to strike the complaint's class allegations. The Court is not addressing whether Montgomery satisfies the requirements of Federal Rule of Civil Procedure 23.

Apart from reiterating its belief that Montgomery lacks standing—an argument the Court has rejected above—Peek argues that a nationwide class is impossible because of differences and conflicts between state laws regulating fees. But although styled as a "nationwide" class, the class definition in Montgomery's complaint makes clear that it only targets fees paid through Peek for "places of entertainment located in New York State." Dkt. 1 ¶ 40. The complaint appears to use the word "nationwide" because the proposed class seeks to cover consumers regardless of their state of residence. The Court concludes that there is no conflict between state laws because New York law would apply to the entire class.

Where no significant federal policy interest exists, federal courts apply the choice-of-law principles of the forum state. *In re Gaston & Snow*, 243 F.3d 599, 607 (2d Cir. 2001). New York courts

---

[4] The Court does not consider Peek's citation to its contract with the Color Factory, Dkt. 30-1, as Peek only attached the contract to its reply brief, not its initial motion to dismiss.

5

"normally apply the law of the jurisdiction having the greatest interest in the litigation, as measured by that jurisdiction's contacts with the litigation." *Id.* at 607–08.

Here, the Court concludes—at least at the pleadings stage—that New York courts would apply New York law to any claims over fees charged by attractions located exclusively in New York. While it is true that many museums in the state attract visitors from across the country (and internationally), the venues are all physically located within the state. As the ultimate object of the transaction—entry to an attraction—happens in New York, the Court concludes that New York has a "greate[r] interest in the litigation" than any other state, *id.* at 607–08, no matter where a putative class member resides. The Court therefore rejects Peek's argument to strike the complaint's class allegations based on variations on the law that would apply across the class.

## CONCLUSION

Peek's motion to dismiss, Dkt. 15, is GRANTED IN PART and DENIED IN PART. Montgomery's claims for injunctive relief and for damages tied to ticket sales for the Color Factory are DISMISSED. The stay of discovery is lifted as to claims tied to the attractions mentioned in the complaint, but remains in place for other attractions pending class certification.

Within 14 days of this order, the parties shall submit a joint letter specifying a schedule for class-certification and summary-judgment motions.

The Clerk of Court is directed to terminate the motion at Dkt. 15.

SO ORDERED.

Dated: November 24, 2025
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge